IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. DIORIO, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO. 20-6211 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                            February 4, 2022

      Plaintiff Joseph Diorio, Jr. brings this employment action against his employer, Defendant City of Philadelphia (the "City"), and a Human Resource Manager for the City, Defendant Katelyn Coughlin, pursuant to the Family Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. § 2601 *et seq*., alleging that Defendants denied him benefits under the FMLA and unlawfully disciplined him for exercising his rights under the Act. Defendants have moved to dismiss the Second Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state an FMLA claim upon which relief can be granted. For the following reasons, we deny Defendants' Motion.

**I.      BACKGROUND**

      The Complaint alleges the following facts. Plaintiff Joseph Diorio began working for the City in 1993. (Compl. ¶ 10.) In September of 2016, he assumed his current position as Director of Audits and Investigations, in the Department of Licenses and Inspections. (<u>Id.</u> ¶¶ 6, 11.) Diorio suffers from a serious health condition that results in chronic sinusitis and, during his employment with the City, he has requested and used FMLA leave both to address his health issues and to care for his ailing mother. (<u>Id.</u> ¶¶ 13, 15.) Specifically, from 2009 through July of 2018, Diorio used 101 days of FMLA leave, with 12 of those days falling in 2018. (<u>Id.</u> ¶ 18.) In June of 2018, Diorio's supervisors reduced his job responsibilities, and reassigned much of his work to

another individual.  (Id. ¶¶ 20-21.)  Although no reason was provided for the reduction in his responsibilities at the time, Diorio "later learned that several members of Senior Management had been discussing his use of intermittent FMLA for several years, in the context of determining whether it impacted his ability to do his job."  (Id. ¶ 20.)  Because his responsibilities were reduced, Diorio "lost opportunities for promotion," including one that would have qualified him for a salary that was five pay grades above his current position.  (Id. ¶ 22.)

In late 2018, Diorio was subjected to disciplinary proceedings for allegedly mismanaging another employee, with his supervisors "believ[ing] that the alleged mismanagement occurred because Diorio was on FLMA leave at a 'critical time.'"  (Id. ¶ 23.)  Specifically, Diorio was out of the office on FLMA leave on June 12, 2018, when the employee under Diorio's supervision behaved inappropriately.  (Id. ¶ 24.)  Two other managers handled the situation that day, but the situation was nonetheless cited as cause for discipline at Diorio's administrative disciplinary hearing in October of 2018.  (Id. ¶¶ 24-25.)  Although there were other reasons given for Diorio's discipline, Diorio proved those reasons to be false at the disciplinary hearing.  (Id. ¶ 26.)  Following the hearing, on December 11, 2018, Diorio was notified that he was receiving a 9-day suspension without pay to be served in January 2019, and the suspension notice specifically referenced the situation on June 12, 2018 as cause for discipline.  (Id. ¶¶ 25, 27.)  Diorio complained about this punishment to the then-Commissioner of the Department of Licenses and Inspections, David J. Perri, in a meeting on January 7, 2019, pointing out that the discipline was related to his use of FMLA leave, but Commissioner Perri took no action.  (Id. ¶¶ 33-35, 37.)  Diorio sent a follow-up email to Commissioner Perri on March 3, 2019, again asking him to review the discipline, but Commissioner Perri did not respond.  (Id. ¶ 37.)  Because of the punishment, Diorio avoided using further FMLA leave out of fear of further retaliation.  (Id. ¶ 39.)

2

Also in March 2019, Commissioner Perri, in response to Diorio's questioning his punishment and asserting that the alleged mismanagement was a result of his using FMLA leave, retaliated against Diorio by ordering that he vacate the office that he had occupied for three years and move into a cubicle.  (Id. ¶ 40.)  In addition, on March 8, 2019, Diorio's access to "TIPS," the Taxpayer Information Payment System that the Revenue Department uses to record taxpayer information, and which Diorio used to do his job, was shut down without explanation.  (Id. ¶ 42.) "Upon information and belief, the TIPS access was ended based in part on Mr. Diorio's use of FMLA."  (Id.)

In April of 2019, Diorio received a letter from Human Resources, advising him that before he could make any new FMLA requests based on his health, he must notify his immediate supervisor or manager.  (Id. ¶ 47.)  This was an extra step that had not been required of Diorio before, was not required of all City employees, and was in addition to the usual procedure of calling the Departmental Sick Line.  (Id. ¶¶ 46-47, 49.)  The April 29, 2019 letter also stated that the FMLA time that Diorio was permitted to use was being reduced from 60 days, which is what he was allotted every previous year, to just 20 days in 2019, thereby "depriving him of 40 FMLA days to which he was entitled."  (Id. ¶ 51.)  Defendant Coughlin asserted that five to ten other City employees received similar letters and that the reason for the additional reporting requirement was to permit staffing adjustments to be made when the employees would be out.  (Id. ¶ 55.) However, the letter did not require Diorio to notify his supervisor or manager if he was going to take a regular sick day or FMLA leave to care for an ailing relative.  (Id. ¶ 48.)  Moreover, Defendant Coughlin admitted that the additional reporting requirement contradicted the City's policy concerning FMLA leave, placed a different burden on Diorio than was placed on other employees, and "may deter an employee from seeking or obtaining FMLA leave."  (Id. ¶ 60.)

On May 15, 2019, Diorio wrote to the City Solicitor to complain about the contents of the April letter and to set up a meeting to address the issues.  (Id. ¶ 53.)  As a result of Diorio's May 2019 letter, the letters to the other five to ten employees who had received letters similar to Diorio's in April were amended to delete the language requiring them to report to their supervisors or managers prior to using FMLA leave, but Diorio's letter was not amended because Diorio had "threatened litigation."  (Id. ¶¶ 57, 59, 61.)

On August 16, 2019, Diorio was out on FMLA leave for his serious health condition, when he received a phone call at home from his acting supervisor.  (Id. ¶ 62.)  His supervisor asked him when he would be returning to work and posed a series of very specific questions about his health condition, including whether he had ever gotten a second opinion, whether he had ever had sinus surgery, whether he was worried about becoming antibiotic resistant, and whether his sinus condition caused balance issues.  (Id. ¶ 62.)  To Diorio, the call felt more like an "interrogation" than a call of "friendly concern."  (Id.)  Moreover, this "sick call" violated the City's own rules, which provide that sick calls are not to be made to employees who have more than 150 days in their "sick bank," which Diorio did.  (Id. ¶ 64.)  As a result of this call, Diorio returned to work even though he was still sick.  (Id. ¶ 66.)  In total, as a result of the Defendants' various actions, Diorio did not take FMLA leave on about 17 days on which he could have taken such leave.  (Id. ¶¶ 72-73.)

The Complaint contains two Counts.  Count I asserts an FMLA retaliation claim, asserting that Defendants retaliated against Diorio for exercising his rights under the FMLA by suspending him for nine days for alleged mismanagement, moving him from an office to a cubicle, revoking his access to TIPS, requiring him to take extra steps in order to take FMLA leave, reducing his annual permitted FMLA leave from 60 to 20 days, and refusing to amend his April 2019 letter

after he complained about its contents. Count II asserts an FMLA interference claim, alleging that Defendants interfered with his rights by requiring him to call his supervisor when he is taking an FMLA day, by reducing his permitted FMLA leave from 60 days to 20, and by making at least one unwarranted sick call.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

5

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555), cert. denied, 141 S. Ct. 2670 (2021).

### III.   DISCUSSION

Defendants have moved to dismiss both Counts of the Complaint for failure to state a claim upon which relief can be granted, arguing that the Complaint does not plausibly allege either an FMLA retaliation or interference claim.

#### A.   **FMLA Retaliation**

In an FMLA retaliation claim, the employee alleges that the employer retaliated against him because he either exercised his rights under the FMLA or opposed a practice that the FMLA makes unlawful. Kiniropoulos v. Northampton Cnty. Child Welfare Serv., 917 F. Supp. 2d 377, 390 (E.D. Pa. 2013) (quoting Reifer v. Colonial Intermediate Unit, 462 F. Supp. 2d 621, 638-39 (M.D. Pa. 2006)). "[T]o assert a retaliation claim under the FMLA, the plaintiff must allege facts from which it may be inferred that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to her invocation of rights." Clark v. Philadelphia Hous. Auth., 701 F. App'x 113, 116 (3d Cir. 2017) (citing Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012)). Causation may be shown through "either an (1) unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)). "Employers 'cannot

use the taking of FMLA leave as a negative factor in employment actions.'" Id. (quoting 29 C.F.R. § 825.220(c)).

Here, the Complaint's retaliation count (Count I) asserts that Diorio (1) was subjected to discipline and punished for his use of FMLA leave; (2) was moved to a cubicle and denied access to TIPS both because of his use of FMLA leave and because he complained that his suspension was motivated by his use of FMLA leave; (3) was required to take an additional step to qualify for FMLA leave and had his allotted FMLA leave reduced from 60 to 20 days (both changes communicated in the April 2019 letter) because of his use of FMLA leave; and (4) was denied relief from the actions set forth in the April 2019 letter because he complained about FMLA discrimination and retaliation.  (Compl. ¶¶ 88, 90-92, 93, 95.)

Defendants argue that we should dismiss this Count in its entirety because the Complaint fails to plead any facts that could support the inference of a causal connection between any adverse employment action and Diorio's invocation of his FMLA rights.[1]  In advancing this argument, Defendants only acknowledge the Complaint's assertion of three retaliatory actions, i.e., the suspension, Diorio's move to a cubicle, and the removal of his access to TIPS, without also addressing the allegations that the contents of the April 2019 letter and Defendants' failure to amend that letter were retaliatory.  Accordingly, they have not developed arguments that support the full dismissal of Count I, and we could deny their motion to dismiss Count I on this basis alone. We will nevertheless also address the arguments that Defendants do develop.

With regard to the claim that Diorio's suspension was retaliatory, Defendants argue that the Complaint "offers nothing more than pure, conclusory speculation that . . . [Diorio's] decision

---

[1] Defendants do not argue that any of the actions about which Diorio complains do not constitute adverse employment actions.

to take family medical leave on [June 12, 2018] . . . led to his discipline." (Defs.' Mem. at 8-9.) However, the Complaint specifically alleges that employee misbehavior on June 12, 2018, when Diorio was out on leave, "was later cited as cause for discipline in Mr. Diorio's administrative hearing" and that the matters that occurred at work that day were "specifically noted as cause for discipline" in his suspension notice. (Id. ¶¶ 24-25.) In the face of these allegations, Defendants fault Diorio for never stating "that the City explicitly informed him that he was being disciplined for failing to be present," and suggest that the actual reason for Diorio's discipline was not his absence on FMLA leave when the employee misbehaved, but "his failure to create a culture that proactively prevented employee misconduct." (Defs.' Mem. at 8-9.) However, a Complaint need not allege that the defendants explicitly admitted the requisite causal connection in order to state a cognizable retaliation claim, and the allegations of the Complaint, i.e., the only allegations we can consider at this stage of the proceedings, do not suggest Defendants' proffered alternative rationale for Diorio's discipline. In the end, reading the allegations of the Complaint in the light most favorable to Diorio, as we must on a motion to dismiss, DelRio-Mocci, 672 F.3d at 245, we find that they allow for a reasonable inference that there was a causal connection between Diorio's absence on FMLA leave and his discipline, i.e., that Diorio was disciplined for not being present to manage his employee.

      Defendants also argue that Diorio has failed to allege facts that create an inference that his move from an office to a cubicle and the removal of his TIPS access, both of which are alleged to have occurred in March 2019, were retaliatory because he, again, "pleads only pure, conclusory speculation . . . that the City engaged in these actions because [he] questioned his punishment and argued that it was related to his leave usage." (Defs.' Mem. at 9 (citation omitted).) Defendants assert that Diorio "fails to offer evidence that these actions were linked to his protected activity"

8

and relies solely on the timing of these actions, which were not close enough in time to any protected activity to give rise to the requisite causal inference. (Id.)

The Complaint alleges, however, that Diorio met with Commissioner Perri to complain about his discipline on January 7, 2019, and followed up with an email to Commissioner Perri on March 3, 2019. (Compl. ¶ 33-34, 37.) Diorio's TIPS access was removed five days later, on March 8, 2019, and Commissioner Perri also ordered that Diorio be moved out of his office that same month. (Id. ¶¶ 40, 42.)

The precise amount of temporal proximity that qualifies as "unusually suggestive" is difficult to identify with precision. The United States Court of Appeals for the Third Circuit has stated that "two days between the protected activity engaged in and the alleged retaliation sufficed . . . to support an inference of a causal connection between the two," while two months "is not so close as to be unduly suggestive." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (quotation omitted) (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)). It has also "held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive." Blakney v. City of Philadelphia, 559 F. App'x 183, 186 (3d Cir. 2014) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).

In light of these parameters, we conclude that the five days between Diorio's follow-up email to Commissioner Perri and the removal of his TIPS access is sufficient temporal proximity to support a plausible claim for retaliation without requiring supplementary factual allegations of causation. And while we do not know the precise date on which Diorio was moved to his cubicle, we need not resolve the issue of whether the temporal proximity between that alleged action and Diorio's protected conduct is sufficient to support a plausible claim of retaliation as we have already concluded that every other aspect of Diorio's retaliation claim survives Defendants'

Motion to Dismiss.  For all of these reasons, we deny Defendants' Motion to Dismiss Diorio's retaliation claim in Count I of the Complaint.

### B. FMLA Interference

 "To assert an interference claim, 'the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them.'"  Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006) (quoting Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005)); see also 29 U.S.C. § 2615(a)(1) (providing that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA")  An interference claim "includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'"  Sommer, 461 F.3d at 399 (quoting 29 C.F.R. § 825.220(b)); see also Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 245 (3d Cir. 2016) (addressing claim that employer discouraged employee from using FMLA leave).

As noted above, the Complaint's interference Count (Count II) asserts that Defendants interfered with Diorio's rights by requiring him to call his supervisor when he is taking an FMLA day, by reducing his permitted FMLA leave from 60 days to 20, and by making at least one unwarranted sick call.  Defendants argue that this Count fails to state a claim upon which relief can be granted because Diorio has not pled that the City denied him any leave that he requested.  They further assert that the Third Circuit's decision in Callison v. City of Philadelphia, 430 F.3d 117 (3d Cir. 2005), forecloses any claim that the City's leave usage policies interfered with Diorio's rights under the FMLA, because the Callison court held that certain City call-in and sick check requirements did not interfere with employees' ability to use FMLA leave.

However, we disagree that Callison forecloses Diorio's interference claim here.  In Callison, which was decided on summary judgment on a fully developed record, the plaintiff, a

City employee, asserted an interference claim against the City based on a City policy that required employees on sick leave to call a Sick Control Hotline if they were leaving their home during regular business hours and allowed for enforcement of that policy by calling employees' residences to confirm that they were home. Callison, 430 F.3d at 118-19. The plaintiff specifically asserted that the City had interfered with his FMLA rights by issuing him two suspensions because he left home during regular working hours while on leave without first calling the Hotline. Id. at 120. In addressing that claim, the Callison court observed that "[t]he FMLA is meant to prohibit employers from [(1)] retaliating against employees who exercise their rights, [(2)] refusing to authorize leave, [(3)] manipulating positions to avoid application of the Act, or [(4)] discriminatorily applying policies to discourage employees from taking leave." Id. at 120 (citing 29 C.F.R. § 825.220). According to the court, the City's enforcement of its challenged policy did not amount to any of these prohibited practices. Id. The court further noted that the City's call-in procedure did not conflict with the FMLA's eligibility requirements, because the procedure did not serve as a prerequisite of FMLA leave entitlement, but merely set "forth obligations of employees who are on leave . . . to provide an additional safeguard against sick leave abuse." Id. at 120-21. It added that "there is no right in the FMLA to be 'left alone'" as "[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave." Id. at 121. The court therefore agreed with the district court that the City's call-in policy "neither prevent[ed] employees from taking FMLA leave nor discourage[ed] employees from taking such leave." Id. at 120.

In the instant case, in contrast to Callison, Diorio alleges that the City discriminatorily applied its policies to discourage him from taking FMLA leave and that, as a result, he did not take leave to which he was entitled. Indeed, the Complaint alleges that Defendants discouraged Diorio

from taking FMLA leave by singling out him and a handful of other employees by requiring them to call their supervisors or managers before taking FMLA leave. (Id. ¶¶ 47, 49-50.) Moreover, the Complaint alleges that the City subsequently deleted this additional requirement for all employees except Diorio. (Id. ¶¶ 57-59.) The Complaint also alleges that Diorio was discouraged from availing himself of his right to take FMLA leave by the City's reduction of his permitted FMLA leave from the sixty days set forth in the Act to just 20 days annually. (Id. ¶¶ 51-52, 67); see also 29 U.S.C. § 2612(a)(1)(D) (stating that an employee "shall be entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee"). In addition, according to the Complaint, when Diorio was out on FMLA leave, his supervisor called his home and asked intrusive probing and personal questions about his health condition and medical care, which further discouraged Diorio from using his FMLA leave and caused him to return to work when he was still sick. (Compl. ¶¶ 62, 65-66.) In the end, the Complaint alleges that, because of the City's actions, Diorio "did not take FMLA leave on about 17 days when he could have done so." (Id. ¶ 72.)

      Given these allegations, and reading them in the light most favorable to Diorio, we cannot conclude at this early stage of the proceedings, before any discovery has been conducted, that no reasonable jury could find that Defendants' alleged conduct in this case discouraged Diorio from taking family medical leave. Rather, we conclude that the Complaint's allegations, taken together, allege sufficient facts to state a cognizable claim for interference with Diorio's FMLA rights because it plausibly alleges that Defendants discriminatorily applied policies to discourage Diorio from exercising his FMLA rights. We therefore deny Defendants' Motion insofar as it seeks dismissal of the FMLA interference claim.

## IV. CONCLUSION

For the foregoing reasons, we deny Defendants' Motion to Dismiss in its entirety. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.